United States District Court
Southern District of Texas
**ENTERED**
March 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN DEWAYNE WARD, (TDCJ–CID #633918) Petitioner, | § § § § § § | CIVIL ACTION NO 4:21–cv–04119 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| BOBBY LUMPKIN, Respondent. | § § § | |

MEMORANDUM ON DISMISSAL

The motion for summary judgment by Respondent Bobby Lumpkin is granted. Dkt 13.

The petition for a writ of *habeas corpus* brought by Kevin Dewayne Ward is dismissed without prejudice. Dkt 1. His motion for summary judgment is denied. Dkt 15.

1. Background

Ward pleaded *nolo contendere* to possession of cocaine and *true* to two enhancements for convictions in March 1992 in Cause Number 610932, before the 248th Judicial District Court of Harris County, Texas. The trial court sentenced him to thirty-five years in prison. Dkt 19-9 at 156.

Ward was initially released to parole in October 2009. Dkt 13-1 at 3–4. This was revoked in December 2011. Id at 3–5. He was then released to parole again in October 2014. Id at 3, 5; Dkt 19-9 at 71. An arrest warrant was executed in Harris County in November 2020. Dkt 13-1 at 6. Ward received notice of his rights in the revocation process on November 6, 2020. Dkt 19-9 at 126. Ward's parole revocation hearing was held on November 19, 2020.

Id at 58. His parole was revoked on December 3, 2020. Id at 112. He was notified of the evidence relied on and the reasons for revocation on December 8, 2020. Id at 114.

Ward filed a state application for a writ of *habeas corpus* in February 2021. Dkt 19-9 at 21. The Texas Court of Criminal Appeals denied it without written order in November 2021 on the findings of the trial court without a hearing and on the court's own independent review of the record. Dkt 19-10 at 1.

Ward proceeds here *pro se*. He filed this federal petition for a writ of *habeas corpus* in December 2021. Dkt 1. He contends that his parole revocation is illegal because his due process rights were violated when (i) he didn't receive a preliminary parole revocation hearing; (ii) he was denied an attorney for his parole revocation hearing despite his history of treatment by the Harris Center, formerly the Mental Health and Mental Retardation Authority; and (iii) he wasn't allowed to confront and cross-examine the adverse witness at his revocation hearing. Dkt 1 at 6–7.

Respondent Bobby Lumpkin moves for summary judgment, arguing that Ward's claims lack merit and must be dismissed. Dkt 13 at 6. He submits a number of exhibits as evidence. This includes the affidavit of Charlie Valdez, Program Supervisor III for the Classification and Records Department of the Texas Department of Criminal Justice—Correctional Institutions Division. Dkt 13, Exhibit A. Also submitted is a copy of Texas Government Code Sections 508.281 and 508.2811. Dkt 13, Exhibit B. Also included are the state *habeas* court records and an audio recording of the parole-revocation hearing. Dkts 14 & 19.

    2. Legal standard
        a. AEDPA

A *pro se* petition is construed liberally and isn't held to the same stringent and rigorous standards as pleadings filed by lawyers. See *Martin v Maxey,* 98 F3d 844, 847 n 4 (5th Cir 1996); *Bledsue v Johnson,* 188 F3d 250, 255

2

(5th Cir 1999). But this doesn't undo what AEDPA itself imposes as the standard of review on disputed questions of both law and fact.

*As to disputed questions of law,* AEDPA bars federal relief based upon claims that were adjudicated on the merits by state courts unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d); see also *Early v Packer*, 537 US 3, 7–8 (2002); *Cobb v Thaler*, 682 F3d 364, 372–73 (5th Cir 2012). The Fifth Circuit holds that a state-court decision is *contrary to clearly established federal law* "if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v Epps*, 616 F3d 436, 439 (5th Cir 2010), citing *Williams v Taylor*, 529 US 362, 404–08 (2002). And the Fifth Circuit holds that *an unreasonable application of federal law* means that the decision is "unreasonable, not merely wrong; even clear error will not suffice." *Escamilla v Stephens*, 602 F Appx 939, 941 (5th Cir 2015, *per curiam*), quoting *White v Woodall*, 572 US 415, 419 (2014). This is a high bar. To surpass it, a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v Donald*, 575 US 312, 316 (2015), quoting *Harrington v Richter*, 562 US 86, 103 (2011).

*As to disputed questions of fact,* AEDPA precludes federal relief unless the adjudication by the state court of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 USC § 2254(d)(2); see also *Martinez v Caldwell*, 644 F3d 238, 241–42 (5th Cir 2011). A state

3

court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 USC § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact." *Murphy v Davis*, 901 F3d 578, 597 (5th Cir 2018), quoting *Valdez v Cockrell*, 274 F3d 941, 948 n 11 (5th Cir 2001).

A federal court reviewing a petition for writ of *habeas corpus* may only consider the factual record that was before the state court when determining the reasonableness of that court's findings and conclusions. *Cullen v Pinholster*, 563 US 170, 180–81 (2011). And the Supreme Court instructs that the reviewing court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v Cain*, 576 US 305, 313–14 (2015), quoting *Wood v Allen*, 558 US 290, 301 (2010). To the contrary, § 2254(d)(2) requires the federal court to "accord the state trial court substantial deference." *Brumfield*, 576 US at 314.

A petitioner seeking a writ of *habeas corpus* must also demonstrate injury of a certain character. To warrant relief based on state-court error, a petitioner must show the alleged error had "substantial and injurious effect." *Brecht v Abrahamson*, 507 US 619 (1993); for example, see *Hughes v Quarterman*, 530 F3d 336, 345 (5th Cir 2008). This high bar isn't met where evidence of the defendant's guilt is overwhelming. *Burgess v Dretke*, 350 F3d 461, 472 (5th Cir 2003). There must be more than a mere reasonable possibility that it contributed to the verdict. *Brecht*, 507 US at 638. But where a court is confident that the error caused grave harm—or even if the record is evenly balanced in this regard—the petitioner is entitled to relief. See *Fry v Pliler*, 551 US 112 n 3 (2007), citing *O'Neal v McAninch*, 513 US 432, 435 (1995); see also *Robertson v Cain*, 324 F3d 297, 305 (5th Cir 2003).

4

### b. AEDPA and Rule 56

The Fifth Circuit holds that Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." *Clark v Johnson*, 202 F3d 760, 764 (5th Cir 2000). But where Rule 56 and the rules governing *habeas corpus* petitions conflict, the latter controls. *Austin v Davis*, 647 F Appx 477, 483 (5th Cir 2016, *per curiam*); see also *Torres v Thaler*, 395 F Appx 101, 106 n 17 (5th Cir 2010, *per curiam*) (citations omitted). As such, the presumption of correctness mandated by § 2254(e)(1) "overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Austin*, 647 F Appx at 483 (citation omitted); cf *Anderson v Liberty Lobby*, 477 US 242, 255 (1986) (stating typical summary-judgment standard in civil cases).

An articulated opinion from a state court has natural pertinence to resolution of disputed questions of both law and fact on *habeas corpus* review. But some state-court decisions reach a conclusion without such articulation. What then? The Fifth Circuit holds, "When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." *Jackson v Johnson*, 194 F3d 641, 651 (5th Cir 1999), quoting *Lott v Hargett*, 80 F3d 161, 164 (5th Cir 1996). This is because a presumption exists that later, unexplained orders rejecting a federal claim are decided on the same basis as earlier, reasoned orders resting upon the same ground. *Ylst v Nunnemaker*, 501 US 797, 803 (1991). This also accords with decisional practice of the Texas criminal courts. The Texas Court of Criminal Appeals holds that a statement of *denial* of a state application for a writ of *habeas corpus* without written order signifies an adjudication that the court below reached the correct ruling on the merits—as compared to a statement of *dismissal*, which means only that the claim was declined

5

on grounds other than the merits. *Ex parte Torres*, 943 SW2d 469, 472 (Tex Crim App 1997, *en banc*); see also *Singleton v Johnson*, 178 F3d 381, 384 (5th Cir 1999).

Even so, the state court's decision will at times be unaccompanied by explanation, with no level of review having issued a reasoned opinion. The Supreme Court holds in such situations that "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 US at 98; see *Salts v Epps*, 676 F3d 468, 480 n 46 (5th Cir 2012) (applying *Harrington*).

### 3. Objection to affidavits

Ward objects that the affidavits of Charlie Valdez and Angela Nation weren't based on personal knowledge and that they didn't testify to any statements in the record. Dkt 15 at 6.

The objection is overruled. The affidavits along with parole hearing records are admissible pursuant to Federal Rule of Evidence 803(6), which provides an exception to the general prohibition on hearsay for records of regularly conducted activities.

### 4. Analysis

#### a. Denial of preliminary hearing

In *Morrissey v Brewer*, the Supreme Court held that the constitutional right to procedural due process applies to parole revocation hearings and provides at least informal procedural protections to parolees. This came with recognition that "not all situations calling for procedural safeguards call for the same kind of procedure." 408 US 471, 481 (1972). It there outlined the minimum constitutional requirements for the two critical stages in the parole revocation process.

*First,* in the preliminary hearing, the State determines "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." 408 US at 485. There may be a substantial lag time between the

parolee's arrest and subsequent determination of whether parole should be revoked. The Supreme Court recognized the need for "some minimal inquiry" that would take place "as promptly as convenient" to determine whether the parolee should be incarcerated pending a final determination by the parole board. It also indicated at least three procedural protections at the preliminary hearing stage: (1) notice to the parolee that parole violations have been alleged, and that a hearing will take place for the purpose of determining whether probable cause exists to believe any violation has occurred; (2) ability of the parolee to appear and speak in his own behalf at the hearing, and to bring letters, documents, or individuals who can give relevant information to the hearing officer; and (3) persons who have given adverse information on which parole revocation may be based are to be made available upon request of the parolee for questioning in his presence, but such person needn't be subjected to confrontation and cross-examination if the hearing officer determines that the person would be subjected to risk of harm if such identity were disclosed. Id at 486–87.

*Second,* if the State determines that probable cause exists to believe that the parolee violated the terms of his parole, the State must afford the parolee a final revocation hearing—if he or she so chooses. The purpose of such final hearing goes beyond a determination of probable cause "to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." Id at 488. The Supreme Court outlined six essential protections required by the Due Process Clause: (1) written notice of the claimed violations of parole; (2) disclosure to the parolee of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing body such as a traditional parole board, the members of which needn't be judicial officers or lawyers; and (6) a written

statement by the fact-finders as to the evidence relied upon and reasons for revoking parole. Id at 489.

The Supreme Court observed, "Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." Id at 483. It stressed that the final revocation hearing should be a "narrow inquiry," yet sufficiently flexible so that the parole board may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Ibid. The goal is to ensure that "the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Id at 484.

Ward complains of the denial of due process during his parole revocation hearing because he didn't receive a preliminary hearing. Dkt 1 at 6. But consideration of the above requirements shows that Ward's due process rights weren't violated. In short, the parole record establishes that Ward received the process to which he was due.

Ward received written notice of his rights and the alleged parole violations on November 6, 2020. Dkt 19-9 at 126. He was notified of the evidence against him, and he attended his revocation hearing via the Zoom cloud platform on November 19, 2020. The hearing officer carefully reviewed each of the charged violations with Ward, who acknowledged that he had received notice of the charges at least five days before the hearing. He had an opportunity to be heard in person and present witnesses and documentary evidence. See id at 58–68. At the hearing, Ward had the conditional right to confront and cross-examine witnesses. Id at 63–67. He received notice of this right both in writing and orally. Id at 53, 60.

The record shows that the same neutral decision-maker presided over Ward's revocation hearing on November 19, 2020. Id at 57–59. Finally, he was given a

8

written statement as to the evidence relied upon and the reasons for revoking parole. Id at 111.

As such, his revocation proceeding appears to have satisfied all of *Morrissey*'s requirements. 408 U.S. at 480. In this regard, the state *habeas* court found:

> 16. In his first ground for relief, the applicant claims he was not provided a preliminary revocation hearing after he requested one. *Applicant's Writ at 6–7.*
>
> 17. The applicant states that on November 6, 2020, after his arrest on a parole warrant, he was issued with a copy of the offender's rights in the parole revocation process. *Id. at 6.*
>
> 18. The applicant states he did not waive his right to a preliminary hearing, but yet his final revocation hearing was held soon after on November 19, 2020. *Id. at 6.*
>
> 19. Based on Valdez's affidavit, the applicant's latest parole warrant was issued on October 31, 2020, and executed on November 2, 2020 in Harris County. *Affidavit of Charley Valdez at 2.*
>
> 20. Based on Nation's affidavit, the applicant's violation report listed
>
>> a. three Rule 0.58 violations (GPS);
>>
>> b. one Rule 8S violation (not use drugs, narcotics, or controlled substances);
>>
>> c. one Rule 8X violation (failure to participate in sex offender treatment program); and
>>
>> d. one Rule 1 violation (failure to report).
>
> *Affidavit of Angela Nation at 2; Affidavit Exhibit B at 25-29.*

9

> 21. Based on Nation's affidavit, the applicant was not entitled to a preliminary hearing because he was charged only with administrative violations. *Affidavit of Angela Nation at 2.*

Dkt 19-9 at 139.

The state *habeas* court concluded:

> 2. Due process requires a preliminary hearing be held as promptly as convenient after a parolee's arrest to determine whether there is probable cause or reasonable grounds to believe the parolee committed acts constituting a violation of parole conditions. *Ex parte Cordova,* 235 S.W.3d 735, 736 (Tex. Crim. App. 2007).
>
> 3. A parolee is entitled to a preliminary hearing, unless the parolee has only been charged with an administrative violation of a condition of release. Tex. Gov't Code § 508.2811(2)(A).
>
> 4. Based on Nation's affidavit and supporting exhibits, the applicant was only charged with administrative violations; therefore, he was not entitled to a preliminary hearing. *See id; Affidavit of Angela Nation at 2; Affidavit Exhibit B at 25–29.*
>
> 5. The applicant fails to show he was entitled to a preliminary hearing and thus fails to prove his first ground for relief.

Dkt 19-9 at 142–143.

As discussed above, the parolee's due process rights regarding the revocation of parole are set out in *Morrissey v Brewer,* with one being that the parole commission must hold a preliminary hearing as promptly as is convenient to determine probable cause. 408 US 471, 485 (1972). Ward did request a preliminary hearing and doesn't appear to

have received one. Dkt 15 at 3. But he *did* receive a final hearing, and he *doesn't* challenge the final parole revocation following that hearing. He instead argues only that he wasn't given a preliminary examination.

In *Collins v Turner,* the Fifth Circuit held that when a petitioner is given an evidentiary hearing prior to the final revocation of his parole, the preliminary hearing isn't necessary. 599 F2d 657, 658 (5th Cir 1979). Looked at a different way, the preliminary hearing of itself has no relation to his incarceration. Ward had an evidentiary hearing on November 19, 2020, before his parole was revoked on December 3, 2020. His present incarceration is the result of the *final* revocation hearing—not the absence of a *preliminary* hearing.

Ward's claim that the absence of a preliminary hearing violated his due process is thus conclusory, unsupported by the record, and will be dismissed as meritless. See *Ross v Estelle*, 694 F2d 1008, 1011 (5th Cir 1983): "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." Beyond that, any lack of a preliminary hearing is, at most, harmless error.

    b.   Denial of counsel

There is no absolute right to counsel during parole revocation proceedings. See *United States v Carrillo*, 660 F3d 914, 925 (5th Cir 2011) (explaining that parolees aren't automatically entitled to appointed counsel at revocation hearings), citing *Gagnon v Scarpelli*, 411 US 778, 790 (1973). However, a due process right to counsel does exist if the parolee makes a timely request for counsel based on a "colorable claim" that (i) he hasn't committed the alleged violation of the conditions upon which he's at liberty, or (ii) even if the violation is "a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex

11

or otherwise difficult to develop or present." *Gagnon*, 411 US at 790. The court also should consider whether the parolee is capable of "speaking effectively for himself." Id at 790–91. States have authority to make a "case-by-case" decision on the need for appointing counsel "in the exercise of a sound discretion." Id at 790.

Ward claims that he was entitled to counsel at his revocation hearing. Dkt 1 at 6. Ward argues that he has a history of mental illness, alleges that his request for counsel was denied. But the record before the state court showed that the allegations at the hearing weren't complex; Ward admitted to committing the alleged violations; and he understood the revocation proceeding and could speak for himself. Dkt 19-9 at 60. Ward doesn't establish that he couldn't understand the violations being alleged, couldn't speak for himself, or couldn't understand the hearing process. He thus fails to show that he was entitled to counsel at his revocation hearing.

On this point, the state *habeas* court found:

> 22. In his second ground for relief, applicant claims he was wrongly denied appointed counsel at his revocation hearing. *Applicant's Writ at 8–9*.
>
> 23. The applicant states he is a MHMRA parolee, a mental health patient, and he was assigned the status of "medically unassigned due to mental health" upon his return to TDCJ in December 2020. *Id. at 8*.
>
> 24. The applicant states because he is mentally challenged, he was unable to comprehend the complicated procedures of his revocation proceedings. *Id. at 8*.
>
> 25. Based on Nation's affidavit, the applicant was not appointed an attorney because the allegations were not complex, he admitted the allegations, and he

understood the proceeding and could speak for himself. *Affidavit of Angela Nation at 3*.

26. Based on Nation's affidavit, the hearing officer also explained that the applicant stated he completed the 12th grade plus one year of college, he reads and writes in the English language, he has a diagnosis of major depression but does not need medication, and that he is aware of the consequences of today's hearing and can speak for himself. *Id. at 3; Affidavit Exhibit B at 3*.

27. Based on Nation's affidavit, the hearing officer also explained that the applicant's reported IQ is 82 and the facts in his case were uncomplicated and straightforward. *Id. at 3; Affidavit Exhibit B at 3*.

28. Based on Nation's affidavit, the applicant testified at both phases of the hearing and demonstrated a clear understanding of the allegations and supporting evidence. *Id. at 3; Affidavit Exhibit B at 3*.

29. Based on the hearing report, the applicant objected to an exhibit regarding his GPS violations, stating he did not think the device was properly recording his movements. *Affidavit Exhibit B at 3*.

30. Based on the hearing report, the applicant objected to another exhibit regarding his positive drug tests, rejecting the information that he continued to test positive when it was one time. *Id. at 4*.

31. Based on the hearing report, on the allegation that he failed to contact the Council on Recovery as instructed by his

13

> parole officer, the applicant testified that he called the recovery place and left his contact information and no one called him. *Id. at 6–7.*
>
> 32. Based on the hearing report, on the allegation that he failed to participate in the Sex Offender Program, the applicant testified that he tried to attend one week but did not have the money to pay for the class, and the week after he did pay to attend but did not stay for the class because he thought his XT unit was broken. *Id. at 7.*
>
> 33. Based on the hearing report, on the allegations that he failed to participate in the GPS program by receiving a Bracelet Gone Alert, the applicant testified that twice he did not get alerts, and one time [t]he device was going off but he thought it was broken. *Id. at 8–9.*
>
> 34. Based on the hearing report, the applicant testified that if he was continued on supervision, he planned to go straight to work, and he would do mental health and substance abuse treatment. *Id. at 10.*
>
> 35. Based on the hearing report, the applicant testified that he felt like he could do good again on parole and that he would live with his stepfather. *Id. at 10.*

Dkt 19-9 at 139–141.

The state *habeas* court concluded:

> 6. A parolee is not absolutely entitled to appointed counsel at a revocation hearing; the decision on the need for counsel must be made case-by-case based on sound discretion by probation and parole system authority. *Gagnon v. Scarpelli,* 411 U.S 778, 790 (1973).

14

> 7. When a parolee has trouble presenting his version of disputed facts, or when the facts or mitigating circumstances are so complex that they can fairly be presented by a trained advocate, counsel should be appointed in a parole revocation proceeding. *Ex parte Taylor,* 957 S.W.2d 43, 47-48 (Tex. Crim. App. 1997).
>
> 8. The applicant fails to show the difficulty he had in presenting his case at his parole revocation hearing. *See Affidavit of Angela Nation at 3; Affidavit Exhibit B at 3–10.*
>
> 9. The applicant fails to show that the disputed facts at the revocation hearing were so complex that he required help from counsel in presenting them. *See id.*
>
> 10. The applicant fails to prove he was entitled to appointed counsel at his revocation hearing and fails to prove his second ground for relief.

Dkt 19-9 at 143.

Ward offers no clear and convincing evidence to support his assertion that he was entitled to the appointment of counsel at his revocation hearing. The Court has reviewed the parole revocation records as well as the audio recording of the hearing. Ward expressed himself clearly and articulately. He understood the consequences of being found guilty of a parole violation. He acknowledged that he initially received notice of four parole violations. A few days later he was notified of a total of six parole violations. He acknowledged receipt of notice of the violation and the supporting documentation. He acknowledged a history of major depression but wasn't on any medication at the time of the hearing. He stated that he completed the twelfth grade and one year of college. He was charged with three Rule O.58 violations (GPS); one Rule 8S violation (not use drugs, narcotics, or controlled sub-

stances); one Rule 8X violation (failure to participate in sex offender treatment program); and one Rule 1 violation (failure to report). Dkt 19-9 at 82–86.

This record undercuts Ward's claim. Ward's bare and unsupported allegations are legally insufficient to entitle him to *habeas* relief. See *Ross v Estelle*, 694 F2d 1008, 1011 (5th Cir 1983). This claim will be dismissed.

### c. Denial of cross-examination

In *Morrissey v Brewer*, 408 US 471 (1972), the Supreme Court recognized that the parolee has the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation.

Ward complains that he wasn't able to cross-examine the parole officer, Kimberly Robinson. Dkt 1 at 7. On this point, the state *habeas* court found:

> 36. In his third ground for relief, the applicant claims he was not allowed to cross-examine an adverse witness at his revocation hearing. *Applicant's Writ at 10.*
>
> 37. The applicant claims that at his revocation hearing, Hearing Officer Debora Sommerfield did not allow him to cross-examine adverse witness Parole Officer Kimberly Robison. *Id. at 10.*
>
> 38. The applicant states Sommerfield never asked him if he had any questions for Robison. *Id. at 10.*
>
> 39. Based on Nation's affidavit, the applicant was given notice of his right to cross-examine any adverse witness at his revocation hearing in writing and orally. *Affidavit of Angela Nation at 4; Affidavit Exhibit A at 1; Affidavit Exhibit B at 3.*
>
> 40. Based on Nation's affidavit, the hearing officer did not deny the applicant the opportunity to cross-examine his parole

> officer at the hearing. *Affidavit of Angela Nation at 4; Affidavit Exhibit B at 6–10.*
>
> 41. Based on Nation's affidavit, the applicant made no request to cross-examine the parole officer. *Affidavit of Angela Nation at 4; Affidavit Exhibit B at 6–10.*

Dkt 19-9 at 141–142.

The state *habeas* court concluded:

> 11. Revocation of parole is not part of a criminal prosecution, and thus not all rights due a defendant in a criminal proceeding apply to parole revocations. *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972).
>
> 12. A parolee who has allegedly violated a condition of parole is still entitled to due process before a decision to revoke that parole may be validly made. *Morrissey,* 408 U.S. at 484.
>
> 13. The due process that a parolee is entitled to includes notice of violations, disclosure of evidence, the opportunity to be heard, and the right to present and cross witnesses. *Morrissey,* 408 U.S. at 497–99.
>
> 14. Based on Nation's affidavit and supporting exhibits, the applicant was aware of his right to cross-examine any witness nor did the hearing officer deny him the opportunity to cross-examine the parole officer. *See Affidavit of Angela Nation at 4; Affidavit Exhibit A at 1; Affidavit Exhibit B at 3–10.*
>
> 15. Based on the hearing report, the applicant could advocate for himself by objecting to the admittance of exhibits and

> testifying in response to the alleged violations. *See Affidavit Exhibit B at 3–10.*
>
> 16. An applicant's sworn allegations alone are not sufficient to prove his claims where there is contrary proof of those claims. *Ex parte Empey,* 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).
>
> 17. The applicant fails to show that he was denied the opportunity to cross-examine any witness at his revocation hearing, and fails to prove his third ground for relief.

Dkt 19-9 at 143–144.

The audio recording of the parole revocation hearing has also been reviewed in this regard. Dkt 14. It discloses that the hearing officer reviewed each parole violation and the evidence in support of each charge during the hearing. She gave Robinson an opportunity to describe the evidence against Ward, while also giving Ward a chance to present his account of events. And the hearing officer asked Ward if he had any questions for Robinson. Ward posed his questions, and Robinson responded.

In this federal *habeas* proceeding, Ward points to no evidence, much less clear and convincing evidence, to support his assertion that he was prevented from cross-examining Robinson. Indeed, the record clearly undercuts his claim. Ward's bare and unsupported allegations are legally insufficient to entitle him to *habeas* relief. See *Ross v Estelle*, 694 F2d 1008, 1011 (5th Cir 1983). This claim will be dismissed.

### 5. Certificate of appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 USC § 2253(c)(2). This

requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v McDaniel*, 529 US 473, 484 (2000).

The Court finds that reasonable jurists wouldn't find this Court's assessment of the constitutional claims debatable or wrong. As such, Ward hasn't made the necessary showing to obtain a certificate of appealability.

A certificate of appealability will be denied.

### 6. Conclusion

The pleadings and state court records show that the federal petition for a writ of *habeas corpus* brought by Petitioner Kevin Dewayne Ward lacks merit.

The motion by Respondent Bobby Lumpkin for summary judgment is GRANTED. Dkt 13.

The motion by Ward for summary judgment is DENIED. Dkt 15.

Any other pending motions are DENIED AS MOOT.

The petition by Ward for a writ of *habeas corpus* is DENIED. Dkt 1.

This case is DISMISSED WITH PREJUDICE.

A certificate of appealability is DENIED.

SO ORDERED.

Signed on March 30, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge